UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JOSE FERNANDO DARDON, Case No.1:22-cv-04076

Plaintiff,

-vs-

**FIRST AMENDED COMPLAINT**

ALRIC PARKING LLC, ANGELO MORDINI Sr., ANGELO MORDINI Jr., and EDUARDO CASADO,

Defendants.
-----------------------------------------------------------X

Plaintiff, JOSE FERNANDO DARDON, by and through his attorneys, the LAW OFFICES OF WILLIAM CAFARO, complaining of the Defendants, hereby alleges as follows:

## ***NATURE OF CASE***

1. This is a civil action for damages and equitable relief based upon Defendant's flagrant and willful violations of Plaintiff's rights guaranteed to him by: (i) the overtime provisions of the Fair Labor Standards Acts ("FLSA"), 29 U.S.C. § 207(a); (ii) the FLSA's minimum wage provisions, 29 U.S.C. § 206(a); (iii) the overtime provisions of the New York Labor Law ("NYLL"), NYLL § 160; N.Y. Comp. Codes R. & Regs. ("NYCCRR") tit. 12, § 142-2.2; (iv) the NYLL's minimum wage provisions, NYLL § 652(1); (v) the NYLL's requirement that employers provide on each payday proper wage statements to their employees containing specific categories of accurate information, NYLL § 195(3); (vi) the requirement that employers furnish employees with a wage notice at the time of hiring and/or on an annual basis containing specific categories of information, NYLL § 195(1); (vii) the requirement that employers pay spread of hours premiums under the NYCCRR tit. 12 § 142 et seq. and (viii) any other claim(s) that can be inferred from the facts set forth herein.

***THE PARTIES***

2. Plaintiff JOSE FERNANDO DARDON, (hereinafter "Mr. Dardon" or "Plaintiff") is an individual residing in Queens County, New York.

3. Upon information and belief, Defendant ALRIC PARKING LLC (hereinafter "Alric Parking") was and is a domestic limited liability company.

4. Upon information and belief, Alric Parking's principal place of business is located at 77-11 Roosevelt Avenue, Jackson Heights, NY 11372.

5. Upon information and belief, Defendant ANGELO MORDINI Sr., (hereinafter "Mordini Sr.") is an individual, whose actual place of business is located at 77-11 Roosevelt Avenue, Jackson Heights, NY 11372.

6. Upon information and belief, at all times herein pertinent, Defendant Mordini Sr. , served as a principal, officer and/or manager of Defendant Alric Parking.

7. At all times herein relevant, upon information and belief, Mordini Sr. is one of the ten largest shareholders as determined by the fair value of the beneficial interest of Alric Parking.

8. Upon information and belief, Defendant ANGELO MORDINI Jr., (hereinafter "Mordini Jr.") is an individual, whose actual place of business is located at 77-11 Roosevelt Avenue, Jackson Heights, NY 11372.

9. Upon information and belief, at all times herein pertinent, Defendant Mordini Jr. , served as a principal, officer and/or manager of Defendant Alric Parking.

10. At all times herein relevant, upon information and belief, Mordini Jr. is one of the ten largest shareholders as determined by the fair value of the beneficial interest of Alric Parking.

11. Upon information and belief, Defendant EDUARDO CASADO, (hereinafter "Casado") is an individual, whose actual place of business is located at 77-11 Roosevelt Avenue, Jackson Heights, NY 11372.

12. Upon information and belief, at all times herein pertinent, Defendant Casado, served as a principal, officer and/or manager of Defendant Alric Parking.

13. At all times herein relevant, upon information and belief, Casado is one of the ten largest shareholders as determined by the fair value of the beneficial interest of Alric Parking.

14. Upon information and belief, for the calendar year 2019 the gross receipts of Alric Parking were not less than $500,000.00.

15. Upon information and belief, for the calendar year 2020 the gross receipts of Alric Parking were not less than $500,000.00.

16. Upon information and belief, for the calendar year 2021 the gross receipts of Alric Parking were not less than $500,000.00.

17. Upon information and belief, for the calendar year 2022 the gross receipts of Alric Parking will not be less than $500,000.00.

## ***JURISDICTION AND VENUE***

18. Jurisdiction is based upon 28 U.S.C. § 1331, insofar as it involves a statute of the United States, specifically, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and Plaintiff relies upon 28 U.S.C. § 1367 to invoke supplemental jurisdiction with respect to the state law claims which form another basis for recovery upon the same factual nexus, specifically Articles 6 & 19 of the Labor Law and related New York State Department of Labor regulations.

19. Venue is based upon 28 U.S.C. § 1391(b)(1), insofar as at least one of the Defendants resides within this Judicial District, and (b)(2), insofar as a substantial part of the events giving rise to the within causes of action occurred in this Judicial District.

## ***FACTUAL ALLEGATIONS***

20. At all times herein pertinent, the Defendants, and each of them, were engaged in an industry having an affect on commerce within the meaning of 29 U.S.C. § 203.

21. At all times herein pertinent, and in the course of his duties, Plaintiff regularly handled products which had been moved in commerce, including, but not limited to, vehicles, parking ticket books, and vehicle lifts.

22. Plaintiff's primary duties did not include the exercise of discretion and independent judgment with respect to any matters of significance.

23. Alric Parking, at all times herein pertinent, operated a parking lot as a going concern, which permitted members of the public to park their vehicles there for a fee, which is hereafter referred to as the "Company". .

24. Mr. Dardon was employed by the Defendants from on or about January 16, 2016 until on or about November 17, 2020.

25. Mr. Dardon was assigned various duties including but not limited to customer service and parking vehicles.

26. Mr. Dardon worked Tuesday through Friday from 7:00 am until 3:00 pm, Saturday from 7:00 am until 5:00PM and Sunday from 7:00 am until 9:00 pm.

27. From the beginning of his employment until the end 2017, Defendants paid Plaintiff $10.50 per work hour.

28. Throughout 2018, Defendants paid Plaintiff $12.00 per work hour.

29. From on or about January 1, 2019 until the end of his employment Defendants paid Plaintiff $13.50 per work hour.

30. Plaintiff regularly worked for the Defendants in excess of forty (40) hours a week but never received an overtime premium of one and one-half times his regular rate of pay for those hours.

31. Plaintiff did not receive the statutory minimum wage for all hours worked.

32. Plaintiff did not receive an extra hour at the prevailing minimum wage when his daily spread of hours/split shift exceeded ten hours.

33. The Defendants paid the Plaintiff in cash.

34. Defendants failed to provide Plaintiff with any wage statements that reflected the amount of hours he worked, his regular rate of pay or his overtime rate of pay for each hour he worked in excess of forty hours in a given workweek.

35. Defendant intentionally did not provide Plaintiff with a wage notice at the time of his hire, or at any time thereafter, containing any of the following information: his rates of pay and basis thereof; whether Plaintiff was paid by the hour, shift, day, week, salary, piece, commission, or other; whether any allowances were claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by Defendant; the name and physical addresses of Defendant; any "doing business as" names used by Defendant; and Defendant's mailing addresses and telephone numbers.

36. Defendants Mordini Sr., Mordini Jr. and Casado had the power to hire employees at Alric Parking.

37. Defendant Casado hired Mr. Dardon on or about November 16, 2016.

38. Defendants Mordini Sr., Mordini Jr. and Casado had the power to fire employees at Alric Parking.

39. Defendants Mordini Sr., Mordini Jr. and Casado controlled the terms of the Plaintiff's employment in that they would each tell him what tasks to complete and on what time frame they needed to be completed.

40. Defendants Mordini Sr., Mordini Jr. and Casado controlled the work schedule of all the employees of Alric Parking, including the Plaintiff's work schedule.

41. Defendants Mordini Sr., Mordini Jr. and Casado controlled the rates and methods of payment of each of the employees of Alric Parking, including the Plaintiff's pay rates and methods of pay.

42. Defendant Casado paid the Plaintiff his wages and the wages of all other employees at Alric Parking.

43. At all times herein pertinent, the Plaintiff's performed his duties for Defendant Alric Parking at the direction and under the control of Defendants Mordini Sr., Mordini Jr. and Casado.

44. At all times herein pertinent, Defendants Mordini Sr., Mordini Jr. and Casado exercised close control over the managerial operations of Alric Parking, including the policies and practices concerning employees.

45. At all times herein pertinent, Defendants Mordini Sr., Mordini Jr. and Casado controlled the terms and conditions of employment, supervised employees, made decisions as to hiring and firing and as to wages with respect to the employees of Alric Parking in general, and with respect to the Plaintiff in particular.

46. Defendant Angel Mordini Sr. came to the parking lot where Plaintiff worked almost everyday until approximately the spring of 2018 to supervise Plaintiff and the operation of the parking garage.

47. Defendant Angel Mordini Sr. routinely directed Plaintiff in the discharge of his duties including directing Plaintiff to move cars to different spots on the parking lot and telling Plaintiff exactly where he had to park certain cars.

48. Defendant Angel Mordini Sr. roiutinely directed Plaintiff to park his car near the exit at all times so he would be able to leave whenever he got back from his office without waiting for any other cars to be moved.

49. Defendant Angel Mordini routinely described the cars of his family members and preferred customers who would be parking there on a particular day, and specifically directed the Plaintiff not to charge them for parking.

50. Defendant Angel Mordini Sr. explicitly and frequently told Plaintiff in sum and substance that Defendant Angel Mordini Sr and Defendant Angel Mordini Jr were the owners of the business, and that Casado was just the manager. On one occasion, when Mordini Sr. told Plaintiff where he wanted a particular car parked, Plaintiff responded that Casado had told him not to park any cars there. Mordini Sr. replied that he was the owner of the Company and the boss, and if Plaintiff didn't do as he said, he would fire both Plaintiff and Casado.

51. Defendant Angel Mordini Jr. explicitly and frequently told Plaintiff in sum and substance that Defendant Angel Mordini Sr and Defendant Angel Mordini Jr were the owners of the Company,

52. Defendant Angel Mordini Sr. explicitly and frequently threatened to fire Plaintiff himself and also Defendant Casado and invoked his own powers as the owner of the Alric Parking LLC.

53. Defendant Angel Mordini Jr. explicitly threatened to fire Plaintiff himself and also Defendant Casado and invoked his own powers as the owner of business. Defendant Angel Mordini Sr. explicitly and frequently directed Plaintiff to keep the spots by the entrance free for his own car and threatened to discharge him if he failed to do so.Plaintiff personally observed Defendant Casado deliver cash revenue from the operations of Alric Parking LLC directly into the hands of either Angel Mordini Sr. or Angel Mordini Jr. each week.

54. In or about the springtime of 2018, Mordini, Sr. stopped coming to the parking garage, upon information and belief, due to advanced age and health issues, and he told

Plaintiff that his son, Mordini, Jr., was now the boss and he would have to do everything that Mordini Jr., told him.

55. Defendant Angel Mordini Sr. explicitly directed Plaintiff to obey all the orders, commands and directions of Defendant Angel Mordini Jr. because Angel Mordini Jr. would now act as the boss and owner of the Company.

56. Defendant Angel Mordini Jr. came to the parking garage where Plaintiff worked on a daily basis at 9:00AM to give Plaintiff instructions about envelopes to hand out to certain individuals.

57. Plaintiff observed that Casado always followed the instructions and orders that Mordini Sr gave him.

58. Plaintiff observed that Casado always followed the instructions and orders that Mordini Jr. gave him,

59. Defendants Angel Mordini Sr., Angel Mordini Jr. and Casado were the primary beneficiaries of the wage theft practices alleged herein and they collected and controlled all the revenue of the business.

60. Defendants Angel Mordini, Sr and Angel Mordini Jr. had the final word about all decisions relating to the operation of Alric Parking LLC and directed their manager Defendant Casado on how and when to schedule Plaintiff and how to pay Plaintiff.

61. Defendants Angel Mordini Sr. and Angel Mordini Jr. decided to underpay Plaintiff and set his pay rate as set forth above.

62. Defendant Angel Mordini Sr. and Angel Mordini Jr. operated as a joint employer along with Defendants Casado in controlling the condition of Plaintiff's employ.

63. When Plaintiff asked about why he was not being paid overtime, Casado told him that they did not pay overtime there.

64. At all times herein pertinent, Defendants Mordini Sr., Mordini Jr. and Casado acted as the Plaintiff's employers within the meaning of the FLSA and the New York State Labor Law.

65. The Defendants did not create or maintain records showing the precise number of hours Plaintiff worked or of wages earned.

66. Plaintiff alternatively alleges that to the extent Defendants created records showing the number of hours Plaintiff worked and/or of wages earned, those records were false and fraudulent.

67. Defendants, at the time of hire, failed to give the Plaintiff a wage notice that conforms with New York law.

68. Defendants failed to give the Plaintiff a wage statement with every payment of wages.

69. Defendants acted in the manner described herein so as to maximize their profits while minimizing their labor costs.

70. Every hour that Plaintiff worked was for Defendants' benefit.

***AS AND FOR A FIRST CAUSE OF ACTION***
***FEDERAL FAIR LABOR STANDARDS ACT***
***AGAINST THE DEFENDANTS, AND EACH OF THEM***
***(OVERTIME)***

71. The Plaintiff hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

72. Defendants were required to directly pay the Plaintiff an overtime premium of one and one half times the Plaintiff's regular rate of pay for all hours worked over forty (40) in a given workweek.

73. Defendants failed to pay the Plaintiffs the overtime wages to which the Plaintiff was entitled under the FLSA.

74. All of the foregoing constituted willful and repeated violations of the Fair Labor Standards Act, so the applicable statute of limitations is three years pursuant to 29 U.S.C. § 255(a).

**AS AND FOR A SECOND CAUSE OF ACTION**
**NEW YORK STATE LABOR LAW**
**AGAINST THE DEFENDANTS, AND EACH OF THEM**
**(FAILURE TO PAY MINIMUM WAGE)**

75. The Plaintiff hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

76. At all times herein pertinent, Plaintiff was an employee of Defendants within the meaning of the New York Labor Law.

77. Defendants are joint employers of the Plaintiff within the meaning of the New York Labor Law.

78. The minimum wage provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Defendants.

79. Defendants have failed to pay the Plaintiff the proper minimum wages to which he was entitled under the New York Labor Law.

80. By Defendants' failure to pay the Plaintiff proper minimum wages for hours worked up to the first 40 hours per week, they have willfully violated the New York Labor Law Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

***AS AND FOR A THIRD CAUSE OF ACTION***
***STATE WAGE AND HOUR LAW***
***AGAINST THE DEFENDANTS, AND EACH OF THEM***
***(OVERTIME)***

81. The Plaintiff hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

82. At all times herein pertinent, the Plaintiff is and was an employee of Defendants within the meaning of the New York Labor Law.

83. Defendants are joint employers of the Plaintiff within the meaning of the New York Labor Law.

84. The overtime wage provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Defendants.

85. Defendants have failed to pay the Plaintiff the overtime wages to which he is entitled under the New York Labor Law.

86. By Defendants' failure to pay the Plaintiff premium overtime wages for hours worked in excess of 40 hours per week, they have willfully violated the New York Labor Law Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

***AS AND FOR A FOURTH CAUSE OF ACTION***
***STATE WAGE AND HOUR LAW***
***AGAINST THE DEFENDANTS, AND EACH OF THEM***
***(FAILURE TO PAY SPREAD OF HOURS)***

87. The Plaintiff hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

88. The Defendants herein knowingly, willfully and in bad faith violated Articles 6 & 19 of NYLL, and more particularly 12 NYCRR § 142-2.4, by failing to pay Plaintiff, one additional hour of pay at the prevailing minimum wage for each day during which there was a split shift and/or the spread of hours exceeded 10 hours.

89. Through their knowing or intentional failure to pay Plaintiff spread-of-hours pay, Defendants have willfully violated the NYLL, Article 19, § § 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

90. Due to Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants his unpaid spread-of-hours wages, liquidated damages, as provided for by the NYLL, reasonable attorneys' fees, costs, and prejudgment and post-judgment interest.

## ***AS AND FOR A FIFTH CAUSE OF ACTION NEW YORK STATE LABOR LAW AGAINST THE DEFENDANTS, AND EACH OF THEM (FAILURE TO PROVIDE ANNUAL WAGE NOTICES)***

91. Plaintiff hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

92. Defendants have willfully failed to furnish the Plaintiff with annual wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by each employee as their primary language, at the time of hiring, and on or before February first of each subsequent year of the employee's employment with the employer, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

93. Through their knowing or intentional failure to provide the Plaintiff with the annual wage notices required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Regulations.

***AS AND FOR A SIXTH CAUSE OF ACTION***
***NEW YORK STATE LABOR LAW***
***AGAINST THE DEFENDANTS, AND EACH OF THEM***
***(FAILURE TO PROVIDE WAGE STATEMENTS***

94. Plaintiff hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

95. Defendants have willfully failed to furnish the Plaintiff with statements with every payment of wages as required by NYLL, Article 6, § 195(3), listing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; and the number of regular and overtime hours worked.

96. Through their knowing or intentional failure to provide the Plaintiff with the wage statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Regulations.

**WHEREFORE**, Plaintiff prays for judgment as against the Defendants, and each of them, as follows:

a) awarding back pay for minimum wage due and owing to the Plaintiff;
b) awarding back pay for overtime pay due and owing to the Plaintiff;
c) awarding back pay for spread-of-hours & split-shift pay due and owing to the Plaintiff;
d) Declaring that Defendants violated the provisions of the NYLL relating to notice and record keeping requirements regarding employees, and awarding

Plaintiff statutory damages and any other relief authorized under the NYLL for violations of those requirements;

e) awarding liquidated damages pursuant to 29 U.S.C. § 216(b) and/or New York State's Labor Law, Articles 6 & 19, §§ 198(1-a), 663(1);

f) awarding the costs and disbursements of this action, along with reasonable attorney's fees pursuant to 29 U.S.C. § 216(b) and/or New York State's Labor Law, Articles 6 & 19, §§ 198(1-a), 663(1);

g) awarding any other relief this Court deems just, proper and equitable.

Dated: New York, New York
April 6, 2026

Respectfully submitted,
LAW OFFICES OF WILLIAM CAFARO

______________________________
William Cafaro
*Attorneys for Plaintiff*
108 West 39th Street, Suite 602
New York, New York 10018
(212) 583-7400
bcafaro@cafaroesq.com
Our File No.: 53072